**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RONALD CROSBY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 18 C 4094 |
| v. | ) | |
| | ) | Hon. Virginia M. Kendall |
| CITY OF CHICAGO; OFFICER S N | ) | |
| RUGGIERO #6626; OFFICER E | ) | |
| GONZALEZ #15231; OFFICER H | ) | |
| MUNGUIA #7100; OFFICER J M | ) | |
| CORONA #11039; OFFICER D E | ) | |
| GESICKI #12423; OFFICER A S | ) | |
| GALLEGOS #15130; OFFICER T F IZZO | ) | |
| JR. 3 15291; OFFICER A CURIEL # | ) | |
| 17296; OFFICER Z MIUCIN #18966; | ) | |
| OFFICER J B ANTICO #7572; and | ) | |
| OFFICER T L GANNON #9694, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Ronald Crosby brings this action alleging violations of his Fourth and Fourteenth Amendment rights and malicious prosecution against the City of Chicago and Chicago Police Officers Ruggiero, Gonzalez, Munguia, Corona, Gesicki, Gallegos, Izzo, Curiel, Miucin, Antico, and Gannon ("CPD Defendants"). Currently before the Court is Defendants' Motion to Dismiss. (Dkt. 13). For the reasons set forth below, the Motion is granted.

**BACKGROUND**

For purposes of a motion to dismiss, the Court presumes the truth of all of the plaintiff's well-pleaded factual allegations. *Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2017). Although this ordinarily entails an examination merely of the allegations in the Complaint, a court may also take judicial notice of matters in the public record, including pleadings and orders

in previous cases. *See Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997) (collecting cases); *see also Collins v. Village of Palatine*, 875 F.3d 839, 842 (7th Cir. 2017) (citing *White v. Keely*, 814 F.3d 883, 885 n.2 (7th Cir. 2016)); *Opoka v. INS*, 94 F.3d 392, 394 (7th Cir. 1996) (proceedings in other courts proper subject of judicial notice). In addition, under Federal Rule of Civil Procedure 10(c), a "copy of any written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Interpreting this Rule, the Seventh Circuit determined that "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002); *see also McCready v. eBay, Inc.*, 453 F.3d 882, 891 (7th Cir. 2006). That is, although a court usually may not consider materials outside of the pleadings on a Rule 12(b)(6) (or 12(c)) motion), "an exception exists when a concededly authentic document is referred to in a complaint and is central to the plaintiff's claim." *Gillis v. Meisner*, 525 F. App'x 506, 509 (7th Cir. 2013) (considering a settlement agreement); *see also ADM Alliance Nutrition, Inc. v. SGA Pharm Lab, Inc.*, 877 F.3d 742, 746 (7th Cir. 2017) (same).

A.      **The December 31, 2010 Arrest**

On December 31, 2010, Gonzalez and other officers responded to a disturbance call at 1119 South Mozart Street in Chicago, Illinois. *See People v. Crosby*, 2017 IL App (1st) 121645, ¶ 3. During the encounter between Crosby and the police, Officer Gonzalez shoved Crosby through a third-floor window, causing him to fall three stories to the ground outside. (Dkt. 1) at ¶¶ 5–7. Afterwards, Crosby was lawfully arrested. *Id.* at ¶ 5. However, "in an attempt to cover up Gonzalez's misconduct," the CPD Defendants came up with a false story that (1) a witness had told an officer that Crosby had a gun and (2) an officer also had seen Crosby with a gun. *Id.* at ¶ 9. This story was included by some of the CPD Defendants in the official police reports of the

incident and the official criminal complaints; it was also communicated to the prosecutors. *Id.* at

¶¶ 10–12. All of the CPD Defendants knew that the story was false, but they either communicated

the false story or failed to intervene and correct it. *Id.* at ¶ 13.

### B. State Criminal Proceedings

Ultimately, Crosby was charged with being an armed habitual criminal and four counts of

unlawful use of a weapon by a felon. *See Crosby*, 2017 IL App (1st) 121645, ¶ 3. On February

29, 2012, Crosby was found guilty of being an armed habitual criminal following a jury trial and

later sentenced to eight years in prison. *Id.* at ¶ 5; (Dkt. 1) at ¶ 14. He was acquitted on the

unlawful use charges. *See* (Dkt. 21) at 49–57 (*People v. Crosby*, No. 11 CR 181701 Certified

Statement of Conviction/Disposition).[1]

---

[1] Although the Complaint does not contain any exhibits, Defendants' Motion to Dismiss contains one exhibit (the Release and Settlement Agreement in *Crosby v. Gonzalez*, No. 12 C 5622 (N.D. Ill) (*Crosby I*)), Crosby's Response contains six exhibits (pleadings and orders in *Crosby I* and the Certified Statement of Conviction/Disposition in *People v. Crosby*, No. 11 CR 181701 (Cir. Ct. Cook County)), and Defendants' Reply contains two exhibits (the 2014 and 2017 appellate court decisions). First, for those attachments that are judicial decisions, pleadings, or certified docket sheets, the Court has already noted its ability to take judicial notice of such matters of public record. That leaves the Release and Settlement Agreement. (Dkt. 13-1). There is no question that the settlement of *Crosby I* is referred to in the Complaint. *See* (Dkt. 1) at ¶ 8 ("Gonzalez's use of excessive force was the subject of a previous lawsuit, Case Number 12-cv-5622, which was resolved through a settlement in 2015."). The settlement of *Crosby I* is important to Crosby's claim here, as he makes efforts to carefully avoid raising any claims in the present lawsuit that have already been resolved. *Id.* In addition, Crosby notes in his Response that he "fronted" the issue of *Crosby I* in his Complaint, stating that it "was resolved by settlement, memorialized in a 'stipulation to dismiss,' filed as ECF No. 65 in 12-cv-5622. The stipulation refers to a 'Release and Settlement Agreement,' which defendants attach as Exhibit 1 to their motion to dismiss, ECF No. 13-1." (Dkt. 21) at 2. Further, Crosby does not raise any issue to the consideration of the Settlement Agreement in connection with Defendants' motion. Instead, he "agrees that the Court may hear and decide defendants' affirmative defenses of release and *res judicata*" at this juncture. *Id.* The Court thus determines that it is within its discretion to include this exhibit in its consideration of Defendants' Motion to Dismiss. *See Yassan v. J.P. Morgan Chase & Co.*, 708 F.3d 963, 975 (7th Cir. 2013) (because defendant attached a copy of the release to its motion to dismiss, and because the complaint repeatedly referenced the release, it was proper for the district court to consider the text of the release in dismissing the case). As final point, Crosby has taken the opportunity by way of his Response brief to present six "relevant pleadings from the first action" that he believes are significant to the disposition of Defendants' Motion. *See* (Dkt. 21).

Crosby timely appealed, raising a number of trial errors. *See People v. Crosby*, 2014 IL App (1st) 121645-U, *appeal denied, judgment vacated*, 60 N.E.3d 75 (Ill. 2016). On March 12, 2014, the Illinois Appellate Court reversed Crosby's conviction without remand based on a change of law that affected one of the two predicate offenses supporting the armed habitual criminal charge. *Id.* The State petitioned the Illinois Supreme Court for leave to appeal. The Illinois Supreme Court denied the petition, and it issued a supervisory order directing the appellate court to vacate the judgment and reconsider it in light of new precedent. *See People v. Crosby*, 60 N.E.3d 75 (Ill. 2016). After more briefing, on June 13, 2017, the Illinois Appellate Court again concluded that Crosby's armed habitual criminal conviction should be reversed "outright." *See Crosby*, 2017 IL App (1st) 121645.

### C. *Crosby v. Gonzalez*, No. 12 C 5622 (N.D. Ill.) (*Crosby I*)

While his criminal appeals proceeded, Crosby filed suit *pro se* in this district against Officers Gonzalez, Izzo, Humphrey, and "all Chicago Police Officers" arguing that they illegally entered his home, used excessive force, and attempted to cover up the incident by charging him with unlawful possession of a weapon. *See* (Dkt. 21) at 15–32 (*Crosby I*, (Dkt. 1) (N.D. Ill. July 17, 2012)). After granting Crosby *in forma pauperis* status and screening his complaint (*id.* at 33–36 (*Crosby I*, (Dkt. 7) (N.D. Ill. Aug. 17, 2012)), the Court recruited counsel to assist Crosby with the lawsuit. *See Crosby I*, (Dkt. 20) (N.D. Ill. Jan. 2, 2013). Crosby later filed a First Amended Complaint. *See* (Dkt. 21) at 37–38 (*Crosby I*, (Dkt. 34) (N.D. Ill. Oct. 2, 2013)). The First Amended Complaint named one defendant—Gonzalez—and brought claims for improper entry and excessive force. *See id.* at 39–46 (*Crosby I*, (Dkt. 35) (N.D. Ill. Oct. 3, 2013)). On May 15, 2015, the parties jointly filed a Stipulation to Dismiss, noting that "this matter has been settled pursuant to the Release and Settlement Agreement executed by the parties, and, therefore this

cause should be dismissed with prejudice." *See id.* at 48 (*Crosby I*, (Dkt. 65) (N.D. Ill. May 5, 2015)). The case was dismissed with prejudice and closed on May 22, 2015. *See Crosby I*, (Dkt. 66) (N.D. Ill. May 22, 2015).

### D.    The Release and Settlement Agreement

As just described, the Release and Settlement Agreement ("2015 Settlement Agreement") was incorporated into the May 15, 2015 Stipulation to Dismiss by reference. A copy of the 2015 Settlement Agreement is attached to Defendants' Motion to Dismiss. *See* (Dkt. 13-1). Pursuant to the agreement, Crosby agreed to "accept a settlement from Defendant, City of Chicago, in the total amount" of $5,000. *Id.* at ¶ 5. In exchange for this sum, Crosby agreed to dismiss with prejudice all of his claims against Officer Gonzalez. *Id.* at ¶ 4. In addition, Paragraph 8 of the 2015 Settlement Agreement stated:

> Plaintiff, upon advice of counsel, understands and agrees that in consideration of the settlement entered pursuant to this Release and Settlement Agreement, Plaintiff does hereby release and forever discharge on behalf of himself and his heirs, executors, administrators and assigns, all claims he had or has against the individual Defendant, Eduardo Gonzalez, and the City of Chicago, its future, current or former officers, agents and employees, including but not limited to all claims he had, has, or may have in the future, under local, state, or federal law, arising either directly or indirectly out of the incident which was the basis of this litigation, and that such release and discharge also is applicable to any and all unnamed and/or unserved defendants.

*Id.* at ¶ 8. The 2015 Settlement Agreement further confirmed that Crosby "relied upon the advice of his attorney" in entering into the agreement and "that the terms of this Release and Settlement Agreement have been interpreted, completely red and explained to him by his attorney, and that those terms are fully understood and voluntarily accepted by Plaintiff." *Id.* at ¶ 11. Finally, the 2015 Settlement Agreement specified that it "shall be construed and interpreted in accordance" with Illinois law and that the terms of the agreement shall not be "construed against a party merely

because that party is or was the principal drafter." *Id.* at ¶ 10.  Crosby, his attorney Jerald Esrick, and attorneys for the City of Chicago executed the agreement.  *Id.* at 4–5.

### E.  The Present Lawsuit

On June 12, 2018, Crosby filed the instant action against Chicago and the eleven CPD Defendants alleging that they fabricated evidence that deprived Crosby of his liberty as a pretrial detainee, caused him to be convicted of a felony, and caused him to be confined for several years.  Crosby also brings a claim for state law malicious prosecution against the City.  *See* (Dkt. 1).  Regarding *Crosby I*, the Complaint specifically notes:  "Gonzalez's use of excessive force was the subject of a previous lawsuit, Case Number 12-cv-5622, which was resolved through a settlement in 2015.  Plaintiff does not raise any claim for damages caused by Gonzalez's use of excessive force."  *Id.* at ¶ 8.

### LEGAL STANDARD

A Rule 12(b)(6) motion challenges the legal sufficiency of the complaint.  For purposes of a motion to dismiss, the Court "'accept[s] as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff.'"  *Calderon-Ramirez*, 877 F.3d at 275 (quoting *Kubiak v. City of Chicago*, 810 F.3d 476, 480-81 (7th Cir. 2016)).  To survive a motion to dismiss, a plaintiff's complaint must allege facts which, when taken as true, "'plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level.'"  *Cochran v. Ill. State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007)).  The Court reads the complaint and assesses its plausibility as a whole.  *See Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011).  A plaintiff need not anticipate affirmative defenses in his complaint, but he may "plead [him]self out of court" by "set[ting] forth everything necessary to satisfy the affirmative defense."  *United States*

*v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005) (citing *Leavell v. Kieffer*, 189 F.3d 492, 495 (7th Cir. 1999)). Thus, affirmative defenses like *res judicata* and collateral estoppel may properly be raised as a basis to dismiss a complaint pursuant to Rule 12(b)(6) if the "plaintiff has pled himself out of court by alleging (and thus admitting) the ingredients of a defense." *Clark & Leland Condominium, L.L.C. v. Northside Community Bank*, 110 F. Supp. 3d 866, 868 (N.D. Ill. 2015).

Even where the complaint does not plead all of the ingredients of a defense, affirmative defenses can still be considered at this stage on a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). A Rule 12(c) motion is subject to the same standard as a Rule 12(b)(6) motion to dismiss and should be granted "only if it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Hayes v. City of Chicago*, 670 F.3d 810, 813 (7th Cir. 2012) (quoting *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 704 (7th Cir. 2004)). The primary function of a Rule 12(c) motion is to "dispos[e] of cases on the basis of the underlying substantive merits of the parties' claims and defenses as they are revealed in the formal pleadings." *Fed. Deposit Ins., Corp. v. FBOP Corp.*, 2017 WL 5891033, at *1 (N.D. Ill. Nov. 27, 2017). In resolving a motion for judgment on the pleadings, the Court draws all reasonable facts and inferences in the non-movant's favor and considers only the pleadings, documents incorporated by reference in the pleadings, and matters subject to judicial notice. *Milwaukee Police Ass'n v. Flynn*, 863 F.3d 636, 640 (7th Cir. 2017). A Rule 12(c) motion is appropriate only when "it is clear that the merits of the controversy can be fairly and fully decided in this summary manner." *Fed. Deposit Ins., Corp.*, 2017 WL 5891033, at *1.

Although the parties appear to agree that Defendants' motion can be evaluated under Rule 12(b)(6), the Court finds that Defendants' motion more properly is construed as a motion for judgment on the pleadings. *See United States v. Rogers Cartage Co.*, 794 F.3d 854, 860 (7th Cir.

2015) (since an affirmative defense is external to the complaint, motions for dismissal on the basis of an affirmative defense should be made under Rule 12(c)); *Yassan v. J.P. Morgan Chase & Co.*, 708 F.3d 963, 975 (7th Cir. 2013) ("Dismissing a case on the basis of an affirmative defense is properly done under Rule 12(c), not Rule 12(b)(6)."). With the parties' submissions here, "all the facts necessary to rule on the affirmative defense are properly before the court." *Rogers*, 794 F.3d at 860; *see also ADM Alliance Nutrition, Inc.*, 877 F.3d at 746 (affirming construction of motion to dismiss based on settlement release as motion for judgment on the pleadings).

## ANALYSIS

The task before the Court is to determine whether the claims against the Defendants can go forward in light of the 2015 Settlement Agreement and the judgment in *Crosby I*. Defendants argue that Crosby's claims here are barred by both the contractual release and *res judicata*. *See* (Dkt. 13). Crosby, on the other hand, argues that the claims he brings here were not released in *Crosby I* because they did not even accrue until June 13, 2017, when the Illinois Appellate Court's second opinion was issued. For this same reason, Crosby argues that *res judicata* does not apply to the claims because they could not have been raised in *Crosby I*. *See* (Dkt. 21).

### A.    The Release

The Court begins with Defendants' argument that Crosby's claims in this matter were released pursuant to the 2015 Settlement Agreement. Under Illinois law, which applies to the 2015 Settlement Agreement (*see* (Dkt. 13-1) at ¶ 10), a settlement agreement is considered a contract, and construction and enforcement of settlement agreements are governed by principles of contract law. *Cannon v. Burge*, 752 F.3d 1079, 1088 (7th Cir. 2014) (citing *Cushing v. Greyhound Lines, Inc.*, 2013 IL App (1st) 103197, ¶ 354); *see also Rogers Cartage Co.*, 794 F.3d at 860. A "release within a settlement agreement also is governed by contract law." *Cannon*, 752 F.3d at 1088 (citing

*Farm Credit Bank of St. Louis v. Whitlock*, 144 Ill. 2d 440, 447 (1991)); *see also Fuller Family Holdings, LLC v. N. Trust Co.*, 371 Ill. App. 3d 605, 614 (1st Dist. 2007) ("A release is a contract whereby a party abandons a claim to the person against whom the claim exists.").

"Where a written agreement is clear and explicit, a court must enforce the agreement as written. Both the meaning of the instrument, and the intention of the parties must be gathered from the face of the document without the assistance of parol evidence or any other extrinsic aids." *Cannon*, 752 F.3d at 1088 (quoting *Rakowski v. Lucente*, 104 Ill. 2d 317, 323 (1984)). "Illinois follows the 'four corners rule' for contract interpretation," which requires us to look to the contract itself to determine the parties' intentions." *Clarendon Am. Ins. co. v. 69 W. Washington Mgmt. LLC*, 374 Ill. App. 3d 580, 585–86 (1st Dist. 2007) (quoting *Air Safety, Inc. v. Teachers Realty Corp.*, 185 Ill. 2d 457, 462 (1999)).

Crosby first briefly argues that the Release is ambiguous. In particular, Crosby contends that the Release is susceptible to more than one meaning because it first refers to the claims he "had or has" and then refers to claims he "had, has or may have in the future" in the same sentence. (Dkt. 21) at 11–12; *see* (Dkt. 13-1) at ¶ 8 ("Plaintiff does hereby release and forever discharge . . . all claims he had or has . . . including but not limited to all claims he had, has, or may have in the future . . . ."). Read as a whole, this sentence is not ambiguous nor does it contain an inherent conflict or lead to more than one reasonable interpretation. On its face, the language clearly releases all possible claims that arise directly or indirectly from the "incident." *See Krilich v. Am. Nat'l Bank & Tr. Co. of Chicago*, 334 Ill. App. 3d 563, 574–75 (2d Dist. 2002) ("A court must construe the meaning of a contract by examining the language and may not interpret the contract in a way contrary to the plain and obvious meaning of its terms."). Further, reading the 2015 Settlement Agreement as a whole, it is clear that the parties intended to resolve all claims related

to the litigation between them: "settlement is made to avoid the uncertainty of the outcome of litigation and the expense in time and money of further litigation and for the purpose of judicial economy." (Dkt. 13-1) at ¶ 3; *see also Krilich*, 334 Ill. App. 3d at 575 (the court must place the meanings of words within the context of the contract as a whole).

However, even accepting Crosby's argument and eliminating consideration of claims Crosby "may have in the future" from the scope of the Release, does not change the Court's ultimate conclusion on this matter because the Release still would cover the claims Crosby brings in this lawsuit. As discussed in greater detail below, even though Crosby's malicious-prosecution claims could not be brought until the reversal of his conviction was final, under controlling precedent, he still "had" those claims at the time he executed the 2015 Settlement Agreement for purposes of this analysis. *See Cannon*, 752 F.3d at 1091–92 (malicious prosecution claims that could not be brought until Cannon's conviction had been set aside "did in fact exist at the time he executed" the settlement because he had already been wrongfully convicted as a result of what he asserted to be a malicious prosecution and therefore they were covered by the release). Further, the pleadings in *Crosby I* and the criminal opinions indicate that he knew of these claims or that they were at minimum predictable at the time the 2015 Settlement Agreement was executed.

Turning, then, to the terms of the release, "when a release is executed with knowledge of its meaning, any cause of action covered by it is barred." *Chicago Transit Auth. v. Yellow Cab Co.*, 110 Ill. App. 3d 379, 383 (1st Dist. 1982). Still, "[i]t is clear that a contractual release cannot be construed to include claims not within the contemplation of the parties." *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 286 (2003). In other words,

> [i]n many cases, a release makes clear on its face what claims were within the contemplation of the parties at the time the release was given. In other instances, the release provides very general language that does not indicate with any clear definition what claims were within the contemplation of the parties. In such cases,

"the courts will restrict the release to the thing or things intended to be released and will refuse to interpret generalities so as to defeat a valid claim not then in the minds of the parties."

*Thornwood, Inc. v. Jenner & Block*, 344 Ill. App. 3d 15, 21 (1st Dist. 2003) (quoting *Carlile v. Snap–On Tools*, 271 Ill. App. 3d 833, 839 (4th Dist. 1995)).

The Release in the 2015 Settlement Agreement is broadly worded as to the types of claims released ("all claims [Crosby] had or has against the individual Defendant, Eduardo Gonzalez, and the City of Chicago, its current or former officers, agents and employees, including but not limited to all claims he had, has, or may have in the future"), but it is specifically limited to only those claims "arising directly or indirectly out of the incident which was the basis of this litigation." (Dkt. 13-1) at ¶ 8. It makes clear on its face what claims were within the contemplation of the parties at the time the release was given. *See ADM Alliance Nutrition, Inc.*, 877 F.3d at 748 (while Illinois courts more narrowly construe general releases that are unlimited in scope, "the release here is not unlimited in scope and is limited to claims arising from the Purchase Agreement.").

With this scope in mind, Crosby argues in favor of a strict construction of "incident" to include only the entry into his home and the use of excessive force by Officer Gomez—that is, the two explicitly delineated counts in his First Amended Complaint. (Dkt. 21) at 9. Crosby also argues that the Release should be strictly construed against the City of Chicago and its employees, because the City drafted the clause and benefitted from it. *Id.* at 11. First, the express terms of the agreement preclude construction against the drafter, so that argument is a nonstarter. (Dkt. 13-1) at ¶ 10 ("Terms contained herein shall not be construed against a party merely because that party is or was the principal drafter."). Second, even with Crosby's proposed strict construction of the "incident" as contained in the Release, the evidence fabrication and malicious prosecution claims in the present case appear to have sprung from the excessive force that formed the basis for *Crosby I*: "*In an attempt to cover up Gonzalez's misconduct*, the officer defendants concocted a false story

that a witness had told an office that plaintiff had a gun and that an officer had seen plaintiff with a gun." (Dkt. 1) at ¶ 9 (emphasis added). It was this same story, which again was created in connection with the excessive force of Officer Gonzalez, that was included in official police reports and criminal complaints and communicated to the prosecutors. *Id.* at ¶¶ 10–12. Accordingly, the allegations contained in the Complaint themselves indicate that the claims here arose "directly or indirectly out of the incident" that was the basis for *Crosby I* and thus are included in the Release.

On this point, Crosby attempts to distinguish his case from situation presented in *Cannon v. Burge*, but *Cannon* is directly analogous and applicable here. In that case, Cannon was arrested, threatened, and tortured until he confessed to committing a murder in 1983. *Cannon*, 752 F.3d. at 1082. At trial, he moved to suppress his confession, but the officers involved lied under oath, denying that Cannon had been tortured. He was later convicted and sentenced to life in prison. *Id.* at 1082–83. In 1986, Cannon initiated a 42 U.S.C. § 1983 action bringing claims of excessive force in connection with his arrest and interrogation. *Id.* at 1083. In 1988, Cannon, on the advice of counsel, settled the case for $3,000 and signed a broadly worded release of his claims against the named defendants as well as the City of Chicago, which was joined for the purpose of settling the case:

> Plaintiff understands, upon advice of his counsel, and agrees that such Judgment is a final and total settlement of all claims he has, or may have in the future, arising either directly or indirectly out of the incident which was the basis of this litigation, and that such finality is applicable to the remaining Defendant, the CITY OF CHICAGO, its officers, agents and employees.

*Id.* at 1083–84. After many years of appeals and other proceedings in his criminal matter, the State agreed to dismiss the substantive case against Cannon, and he again brought suit under § 1983 concerning, as relevant here, claims against the City of Chicago and various Chicago police

officers for deprivation of his right to a fair trial, false arrest and false imprisonment, malicious prosecution, and other things. *Id.* at 1087.

In evaluating the scope of the release signed by Cannon, the Seventh Circuit did not hesitate to conclude that "[t]he incident that served as the basis for Cannon's 1983 *pro se* complaint also supplied the basis for Cannon's current claims," because all of the claims arose from the torture Cannon endured. *Id.* at 1091. That is, the torture (or excessive force) alleged in the 1983 case was connected to Cannon's purportedly false confession, which then led to his murder convictions. *Cannon* controls the directly analogous situation presented here: the incident that underscored the claims in *Crosby I*—the December 31, 2010 arrest (or, as confined by Crosby to only the unlawful entry and excessive force)—led to the alleged false cover up story (*see* (Dkt. 1) at ¶ 9), which led to Crosby's criminal conviction (*id.* at ¶ 14). Like *Cannon*, Crosby's "attempts to carve out his claims for wrongful conviction and malicious prosecution as separate and distinct incidents not covered by the settlement" (*Cannon*, 752 F.3d at 1092) cannot succeed under the clear language of the Release he signed, which applied to release "all claims he had, has, or may have in the future, under local, state, or federal law, arising either directly or indirectly out of the incident which was the basis of this litigation." (Dkt. 13-1) at ¶ 8.

Looking next to the Release language relating to future claims, agreements that release parties from future liability generally are not favored. Still, "[t]he intention of the parties controls the scope and effect of the release, and this intent is discerned from the release's express language as well as the circumstances surrounding the agreement." *Fuller Family Holdings, LLC*, 371 Ill. App. 3d at 614. "Where a releasing party was unaware of other claims, Illinois law restricts the release to the particular claims that are explicitly covered by the agreement." *Id.* (citation omitted). Here, Crosby makes no argument that he was unaware of his deferred accrual claims and in fact,

the history of his criminal matter indicates that at the time the 2015 Settlement Agreement was executed, although the criminal appellate process had not yet been exhausted, Crosby's conviction had already been reversed by the Illinois Appellate Court. Further, Crosby had originally included claims of malicious prosecution in his *pro se* complaint in *Crosby I*. As such, even if Crosby somehow did not know for certain that he might have claims for evidence fabrication or malicious prosecution in the future, such claims at least were predicable. *Wagner v. NutraSweet Co.*, 95 F.3d 527, 533 (7th Cir. 1996) (a knowing waiver involves either known claims or claims "that are in general terms predictable"). In spite this fact, the Release contains language about the release of all future claims arising from the incident in *Crosby I* without exception.

Crosby also argues that he could not have released claims that *accrued* after the execution the 2015 Settlement Agreement. (Dkt. 21) at ¶ 11–12. But *Cannon* addressed this exact issue—claims of malicious prosecution brought in a subsequent lawsuit. Specifically, the Seventh Circuit found Cannon's agreement to the final and total settlement of "of all claims he has, or may have in the future, arising from the incident underlying the 1983 suit"—similar to the language in Crosby's Release—unambiguously included claims that Cannon asserts he could not have contemplated until a time after the settlement, "including claims that he alleges did not accrue until after the settlement." *Cannon*, 752 F.3d at 1091. The Seventh Circuit further noted "the reality that these claims *did* in fact exist at the time he executed" the settlement. *Id.* at 1092 (emphasis added). "That is, he had already been wrongfully convicted as a result of what he asserts to be a malicious prosecution. That he could not bring these claims until his conviction was set aside is irrelevant to the clear language of the 1988 Stipulation, which releases the defendants from all claims 'arising from' the initial incident." *Id.*

So too here.  When he signed the 2015 Settlement Agreement, Crosby had already been convicted of what he asserts to be a malicious prosecution.  Although these claims had yet to officially accrue, that fact does not preclude their inclusion in the Release, especially when, as explained above, Crosby knew of the claims or they were at least predicable to him.  The language of the Release, which is limited to all claims that arise from the incident in *Crosby I*, distinguishes this case from those cited by Crosby as prohibiting the release of future, uncontemplated claims.  *See* (Dkt. 21) at 12; *cf. Feltmeier*, 207 Ill. 2d at 285–85 (general release in 1997 marital settlement agreement did not release claim for intentional emotional distress that accrued in 1999 and that was not contemplated by the parties); *Cange v. Stotler & Co.*, 826 F.2d 581, 595 n.11 (7th Cir. 1987) (a prospective waiver where statutory violation has yet to occur can violate public policy).

Crosby's final argument concerning the Release is that it must specifically name all joint tortfeasors to appropriately waive claims against them.  Under the Illinois Joint Tortfeasor Act:

> When a release or covenant not to sue or not to enforce judgment is given in good faith to one or more persons liable in tort arising out of the same injury or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide but it reduces the recovery on any claim against the others to the extent of any amount stated in the release or the covenant, or in the amount of the consideration actually paid for it, whichever is greater.

740 ILCS 100/2(c).  According to Crosby, since only Officer Gonzalez and the City were formally named in the Release, no other joint tortfeasors were released.  (Dkt. 21) at 13–14.  However, as Defendants point out (Dkt. 25), "the designation of a class of persons in a release can satisfy" *Alsup v. Firestone Tire & Rubber Co.*, 101 Ill. 2d 196 (1984), which is the controlling case interpreting the Act and which requires that, to be effective, a release must specifically name or otherwise specifically identify those to whom it applies.  *Polsky v. BDO Seidman*, 293 Ill. App. 3d 414, 422 (2d Dist. 1997) (the class designation "agents" satisfies *Alsup* and releases individuals who belong to that class).  The Release in the 2015 Settlement Agreement names "the individual

Defendant, Eduardo Gonzalez, and the City of Chicago, and its future, current or former officers, agents and employees" as the released parties with regard to claims arising from the *Crosby I* "incident." (Dkt. 13-1) at ¶ 8. Again, where the terms of a contractual release are clear and explicit, a reviewing court must enforce them as written. *Fuller Family Holdings, LLC*, 371 Ill. App. 3d at 614. The designation of the released parties is unambiguous and the class designations of the City's officers, agents, and employees are sufficient to identify all Defendants named in this action as released parties in compliance with the Act. *See Farmers Auto. Ins. Ass'n v. Wroblewski*, 382 Ill. App. 3d 688, 698 (1st Dist. 2008) (the terms "agents" and "employees" are classes that sufficiently identify the employee-defendant because she was a member of those classes). As further support for this conclusion, the Release specifically stated that it applied to "to any and all unnamed and/or unserved defendants." (Dkt. 13-1) at ¶ 8.

In sum, the Court concludes that the Release in the 2015 Settlement Agreement covers the claims Crosby currently brings before the Court. Therefore, judgment in favor of Defendants is proper.

### B. *Res Judicata*

The Court will also briefly address Defendants' alternative argument in favor applying claim preclusion to this matter. "The preclusive effect of a federal-court judgment is determined by federal common law." *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008). "In federal court, *res judicata* has three elements: (1) an identity of the parties or their privies in the first and second lawsuits; (2) an identity of the cause of action; and (3) a final judgment on the merits in the first suit." *Adams v. City of Indianapolis*, 742 F.3d 720, 736 (7th Cir. 2014) (citing *Matrix IV, Inc. v. Am. Nat'l Bank & Trust Co. of Chicago*, 649 F.3d 539, 547 (7th Cir. 2011)). Under the doctrine

of *res judicata*, a final judgment on the merits of an action precludes the relitigation of issues that were or could have been raised in that action. *Allen v. McCurry*, 449 U.S. 90, 94 (1980).

Defendants argue that the dismissal of *Crosby I* has a preclusive effect on the claims asserted here. Crosby does not dispute that *Crosby I* was disposed of by a final judgment on the merits. *See Brooks-Ngwenya v. Indianapolis Public Sch.*, 564 F.3d 804, 809 (7th Cir. 2009) (per curiam) (holding that dismissal with prejudice based on a settlement agreement is a final judgment for purposes of claim preclusion); *see, e.g., Daniels v. Rivers*, 2014 WL 6910492, at \*7 (N.D. Ill. Dec. 9, 2014) ("A voluntary dismissal with prejudice pursuant to a settlement agreement operates as a final judgment on the merits that is entitled to full *res judicata* effect.") (quoting *Fox v. Will County*, 2012 WL 2129393 at \*4 (N.D. Ill. June 8, 2012)). However, he disputes the remaining two elements, arguing that the parties and claims in the two actions are not the same.

**Identity of Parties.** There is no dispute that the Crosby is the plaintiff in both cases. Instead, Crosby argues that the defendants in the two actions are not the same—Officer Gonzalez is the only common defendant between the two actions, because he was the only defendant named in *Crosby I* at the time judgment was entered. (Dkt. 21) at 6–7. In other words, Crosby argues that ten officer Defendants here (all of the CPD Defendants except for Gonzalez) and the City of Chicago "were not parties to the judgment entered in" *Crosby I. Id.* Further, Crosby argues that one of these non-Gonzalez defendants were in privity with him, because Gonzalez was sued only in his individual capacity in *Crosby I. Id.* at 7.

But these arguments ignore the 2015 Settlement Agreement in that matter. First, the agreement states that Crosby accepted a settlement payment from "Defendant, City of Chicago," which indicates that the City was joined as a defendant for purposes of settling the case, as was also done in *Cannon*. (Dkt. 13-1) at ¶ 5; *Cannon*, 752 F.3d at 1083. Further, the 2015 Settlement

Agreement, which was incorporated in the Stipulation to Dismiss by reference, explicitly released not only to "Defendant, Eduardo Gonzalez," but also "the City of Chicago, and its future, current or former officers, agents and employees." (Dkt. 13-1) at ¶ 8. Accordingly, the fact that the First Amended Complaint named only Officer Gonzalez in his individual capacity does not control the *res judicata* analysis here, where Crosby bargained for a settlement that released the City and all of its officers, agents, and employees. *See, e.g., Daniels*, 2014 WL 6910492, at *7 ("the express terms of a settlement agreement, not merely the terms of the judgment, determine the bounds of preclusion after a settlement"). For this reason, his privity argument fails: since he included the City and its employees in the release and therefore the Stipulation to Dismiss in that suit, there is no need to find privity between Officer Gonzalez and anyone else.

In any event, the case Crosby relies on for the premise that an individual sued in his personal capacity is not generally considered to be in privity with the government entity that employs is distinguishable from the situation here. *See* (Dkt. 21) at 7 (citing *Wright v. Barich*, 2018 WL 2561016, at *2 (N.D. Ill. June 4, 2018)). In *Wright*, the plaintiff first sued a municipality on December 24, 2014 for holding him in custody for more than 48 hours without a probable cause hearing. *Id.* at *1. That case was terminated when the plaintiff accepted a Federal Rule of Civil Procedure 68 offer of judgment. *Id.* The plaintiff later brought suit against the same municipality and an individual officer for his unlawful detention from December 25, 2014 through January 15, 2015. *Id.* In concluding that res judicata did not bar the second suit, the court concluded not only that the causes of action were different because they concerned two different periods of detention, the court also held that the defendants in both suits were not the same, because the individual officer was not sued in the first action and could be found in privity with the municipality sued

there. *Id*. at *2. Unlike the *Crosby I*, the first suit in *Wright* did not involve a release of the municipality and all of its employees.

**Identity of Causes of Action**. The final requirement for the application of *res judicata* is that the two actions have an identity of causes of action. "[T]he test for an identity of the causes of action is whether the claims arise out of the same set of operative facts or the same transaction." *Kilburn-Winnie v. Town of Fortville*, 891 F.3d 330, 333 (7th Cir. 2018) (internal quotation and citation omitted); *see also Adams*, 742 F.3d at 736 (whether there is an identity of the cause of action depends on "'whether the claims comprise the same core of operative facts that give rise to a remedy.'") (citation omitted). This means that the current matter and the previously litigated matter are based on the same, or nearly the same, factual allegations arising from the same transaction or occurrence. *Bernstein v. Bankert*, 733 F.3d 190, 226 (7th Cir. 2013); *Matrix IV, Inc.*, 649 F.3d at 547. If the transactional test is met (along with the other elements of *res judicata*), "[r]es judicata* bars any claims that were litigated or could have been litigated in a previous action." *Kilburn-Winnie*, 891 F.3d at 333 (internal quotation omitted).

As the Court has already concluded, the claims in *Crosby I* and the claims in the Complaint here arise from the same "incident." For the same reasons that support that conclusion, it thus stands to reason that the claims satisfy the transaction test despite Crosby's arguments that the two complaints raise technically different claims. Crosby argues, however, that he could not have brought the claims raised here in *Crosby I*, because they did not officially accrue until June 13, 2017, the date of the second Illinois Appellate Court opinion. (Dkt. 21) at 4–5.

To begin, Crosby's initial complaint in *Crosby I* brought claims for the improper entry of his home without a warrant, probable cause, or exigent circumstances; excessive force and failure to intervene; and malicious prosecution. (Dkt. 21) at 16–19. The Court's screening order

permitted him to proceed on all of these claims against the named officers (Gonzalez, Izzo, and Humphrey) in their individual capacities only. *Id.* at 34–36. Even though the First Amended Complaint pared down the counts and defendants to assert only excessive force and illegal entry against Gonzalez, the pleadings indicate that Crosby did initially bring and could have maintained his malicious prosecution claim in that proceeding. *Id.* at 40–46. That Crosby may have had to request a stay of the proceedings while the criminal appeals were ongoing or request dismissal of the claims without prejudice with leave to reinstate does not affect this result. And unlike in *Smith v. Potter*, 513 F.3d 781 (7th Cir. 2008) and *Morgan v. Covington Twp.*, 648 F.3d 172, 177 (3d Cir. 2011), to which Crosby cites ((Dkt. 21) at 5), the current case does not involve *events* that "post-date" the filing of *Crosby I.*

More significantly, where the final judgment was based upon a settlement agreement, however, "the express terms of a settlement agreement, not merely the terms of the judgment, determine the bounds of preclusion after a settlement." *Daniels*, 2014 WL 6910492, at *7 (citing *Toscano v. Conn. Gen. Life Ins. Co.*, 288 F. App'x 36, 38 (3rd Cir. 2008)). As stated above, the 2015 Settlement Agreement covers the malicious prosecution and evidence fabrication claims raised in this matter. So the dismissal of *Crosby I* based upon the 2015 Settlement Agreement precludes Crosby from bringing the claims asserted here. *Id.*; *see also Cannon*, 752 F.3d at 1101 (noting in *dicta* that "the elements required for claim preclusion would appear to be present here" where the settlement (which included the City and all of its employees) was incorporated into a final judgment and the claims in both suits arose from the same operative facts). For these reasons, *res judicata* also prevents Crosby from proceeding with the claims he asserts in this case.

## **CONCLUSION**

For reasons stated above, Defendants Motion (Dkt. 13) is granted. The Complaint is dismissed with prejudice.

Hon. Virginia M. Kendall
United States District Judge

Date: November 28, 2018